HULDA HACKBART, EXECUTRIX, APPELLEE, V. EDWARD H. ROHRIG ET AL.: RICHARD ROHRIG ET AL., APPELLANTS.
287 N. W. 665

FILED SEPTEMBER 29, 1939. No. 30601.

L. R. Doyle and T. R. P. Stocker, for appellants.

Matschullat & Matschullat and Erwin A. Jones, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an appeal by the defendants from a judgment entered against them as the result of an automobile accident. Plaintiff brought the action as the executrix of the

estate of her late husband, Albert Hackbart. In the petition one cause of action was for wrongful death, one for pain and suffering, and another for medical and hospital bills. Plaintiff in open court dismissed the cause of action for wrongful death. On the remaining first cause of action, the jury returned a verdict for $1,900, and on the last cause of action, $674.20; total verdict, $2,574.20. The trial court required a remittitur of $900 on the first cause of action as a condition to overruling the motion for new trial. Judgment for $1,674.20.

At the close of the evidence the plaintiff dismissed the action as to John Rohrig, Edward H. Rohrig, Jacob E. Rohrig, and Robert Rohrig, individually and as doing business as the Shogo Lithia Springs Company and the Rohrig Distributing Company, leaving as defendants herein only Richard Rohrig, who testified that he was sole owner of Rohrig Distributing Company, and Conrad Knopp, who was the driver of the truck which was in the collision.

The Rohrig Distributing Company is the wholesale distributor for Budweiser beer in the general territory between Ashland on the east and Exeter on the west, but not including Lancaster county.

The defendants insist in their brief that "this accident never could have occurred, except by the driver of the Ford coupé turning out of his way and plunging into the front of the truck." Defendants charge that this was the result of intoxication, and that the judgment should be reversed because the trial court entirely failed to instruct the jury on this phase of the case.

The defendants set out as their first proposition of law for reversal: "Where all the occupants of an auto engage in a drinking bout, none can recover for injuries caused by the negligent driving, if the jury find the drinking to be a contributory negligent act, which, even, if not amounting to drunkenness has rendered the parties incapable of exercising the care of a reasonably prudent person;" and as their second proposition of law: "It is reversible error for the trial court not to submit to the jury proper instructions

setting forth the defendants' theory of the case, it being the positive duty of the trial court to submit all the issues to the jury."

As to the place of the accident, we can best describe it by saying that, about 18 miles west of Lincoln on O street, that street divides, and two paved federal highways turn from it at this point, No. 34 turning to the north and going to Seward, while No. 6 turns to the south and goes to Milford, and across the top of the "Y" made by the separation of these two roads is No. 15, which runs north and south straight through on the section line, thereby closing the top of the "Y". The accident occurred at the upper right-hand corner of the "Y", where No. 15, running straight north, connects with No. 34, coming from Seward, and occurred in that part of the intersection just as No. 34 was starting to turn off from No. 15 to join No. 6 at the lower point of the "Y".

The first vehicle involved in the crash was a very old light coupé, being a 1929 Model A Ford, in which three men were riding on the seat; the plaintiff's decedent was riding as a guest, the Ford being driven by Peter Gerken, and Alonzo Weber was also a guest, these three men being all killed as a result of the accident. The other vehicle was a 1937 Dodge truck, loaded with a ton and a half to two tons of Budweiser beer, and being driven by Conrad Knopp, 35 years of age, who was riding alone, and was the regular driver for the Rohrig Distributing Company, of Lincoln.

The accident occurred about 5:30 p. m. on December 1, 1937, after dusk, when the lights were burning on both cars, and was a head-on collision between the truck coming from Seward on No. 34 and starting to make the turn at the intersection with No. 15, while the Ford was driving directly north on No. 15, and the driver turned the same to the right without giving any warning thereof, and failed to give the right of way in the intersection to Conrad Knopp, who was in the intersection first, and Knopp testified that the Ford turned to the east across the intersection and ran directly into his truck.

The particular errors which the defendants rely upon for reversal are based upon the fact that the court, in giving its instructions to the jury, failed to set out the defense of intoxication in reference to the plaintiff's decedent, or the driver of the car in which he was a guest, as charged in the answer.

The court in instruction No. 1, in setting out the allegations of the defendants' answer, used this language: "Defendants specifically deny any negligence in connection with the accident on the part of their driver Conrad Knopp and allege that the accident and resulting damages and injuries to plaintiff's husband, if any, were directly, solely and proximately caused by the negligence of the driver of the car in which Albert Hackbart was riding. Defendants allege that Peter Gerken, the driver of the car in which plaintiff's husband was riding, was negligent, and that such negligence was the proximate cause of the accident in the following particulars: That Peter Gerken turned his car to the right immediately prior to the accident so as to run it directly into the truck driven by Conrad Knopp, and failed to keep a proper lookout and have his car under reasonable control; failed to apply his brakes, stop, or slacken the speed of his automobile before striking the truck; and failed to turn his automobile away from the path of the truck driven by Conrad Knopp, driving the same at an excessive rate of speed greater than reasonable and proper, having regard for the conditions of the roadway and the traffic thereon, and turned the same to the right without giving any warning of his approach, and failed to give the right of way in the intersection to Conrad Knopp who was in the intersection first and turning to the east across the intersection."

In the answer, of which this instruction purported to be an abstract, we find the following allegations:

"7. Allege that if the said Albert Hackbart sustained the injuries and damages in the collision described in plaintiff's amended petition which caused the death of the said Albert Hackbart, that the same were proximately caused

or contributed to by his careless and negligent acts of omission and commission in the following respects: * * *

"c. In that the said Albert Hackbart at the time and place of the said accident and prior thereto was engaged knowingly and voluntarily in riding in an automobile being operated by Peter Gerken who had been drinking intoxicating liquor and who was at said time and place under the influence of intoxicating liquor. * * *

"h. In that Albert Hackbart himself had been, prior to the said accident, engaged in drinking intoxicating liquor and was not in the condition physically and mentally to exercise due and ordinary care and did not at said time and place exercise due, ordinary and reasonable care."

It therefore appears that the trial court omitted any reference whatever to drinking or intoxication in setting out the allegations of the answer, and the question at once arises whether the defendants produced evidence in support of these allegations.

Part of the evidence in regard to drinking and intoxication is to be found in two depositions. The first is the deposition of Ben Schuknect, who testified that he ran a beer tavern, called Pines Café, in Milford, and on December 1, 1937, he had just moved from an uptown place of business down to highway No. 6; that he had been acquainted with the plaintiff's decedent, Albert Hackbart, for about 25 years, as he had lived neighbor to him while they were both farming, and that he had only quit farming in February, 1937; that he had been acquainted with Peter Gerken, who drove the Ford on the afternoon of the accident, for about 15 years; that Peter had worked for him as a harvest hand during threshing time, and that he had known the third man in the Ford, Alonzo Weber, for about 25 years; that he had played cards with him; that these three men were in his place of business on December 1, 1937; that they came in his old place of business uptown in Milford at about 4 o'clock that afternoon and said they wanted some beer, and he told them he was sorry but he had moved down to the new place on the highway; that

about 4:30 to 4:45 they came into his place on the highway called Pines Café. and ordered some beer; that Pete drank three bottles of beer, Lon (meaning Alonzo Weber) drank three, and Albert drank two bottles of beer, all of them being pint bottles; that they were served by the lady, Mrs. Ficke; that all of the bottles of beer were alcoholic beer; that they might have been drinking beer before they came there for all he knew; that about the time they left Pete said he told "the Mrs." he would have Albert home at 5 o'clock, and it was a little after five when they left; that at 6 o'clock he first heard of the accident, when he was in the butcher shop.

The deposition of Reinhard Bluhm was offered by the defendants, and the direct examination read by Mr. Doyle. He said he had been in the beer business at Milford for a little more than ten months; that he was acquainted with Peter Gerken, Albert Hackbart, and Alonzo Weber; that he had known Peter Gerken 15 or 20 years, had business dealings with him once or twice, and had been neighbors with him; that Peter Gerken lived around Ruby, and that he had a speaking acquaintance with him; that he had been a farmer all his life except the last four years; that he had known Albert Hackbart for 15 years, and Alonzo Weber 25 years; that he had sold grain to Weber when he was in the elevator in Ruby years ago; that these three men came to his place of business in Milford on December 1, 1937, around 3 o'clock in the afternoon of that day, or a little later; that they had been to a sale before that, and they were talking about the sale; that they stayed in his place of business from half to three-quarters of an hour, drinking beer; that they took two bottles apiece, or one time had a bottle of beer apiece and one time a glass of beer apiece. The beer was served in 14-ounce glasses, and there were 12 ounces in the bottles. He said that the tap beer that he sold them in the glasses was Storz beer. He testified that he was pretty busy that afternoon, and did not have much time to talk with them, or pay much attention to them, and that he did not notice when they went out

of his place of business; that they appeared normal to him; that he did not observe how they walked when they came in or when they went out.

The evidence discloses that there were three eyewitnesses close to the accident. Alfred Chantry, a lineman for the Iowa-Nebraska Light & Power Company since 1924, who lives in Seward, was riding in the truck, going straight north on No. 15. Frank Barney was driving the truck. They were driving from Crete to Seward, and the Ford coupé passed around them about three-quarters of a mile from where the collision occurred. They were driving about 25 or 30 miles an hour. He testified that the truck of the defendants had turned east on No. 34 prior to the accident, and was clear to the east edge of the highway, and that the Ford *swerved* to the east about the length or width of the car towards the truck. Frank Barney testified that the lights of all the cars concerned were lighted, and that the Ford had passed them to the south of the intersection of No. 6 and No. 15, and that he was driving his truck from 20 to 28 miles an hour, and that he would estimate the speed of the Ford when it passed him at 30 to 32 miles an hour. He looked immediately after the impact, and said that the Ford caught fire immediately after the collision.

Conrad Knopp, the driver of the Dodge truck belonging to the defendants, was the third eyewitness to the accident, and he testified that all of his nine lights were on at the time of the collision, and had been burning for about half an hour before the collision; that the lights would show better than any arm signal. He further testified that, if the Ford had continued straight north in its lane of travel, there would have been no accident, but that the Ford first started to turn to the northwest, and when the cars were about 30 feet apart the Ford driver suddenly turned straight east and drove directly into his truck.

One or two of the men who were picking up the bodies and putting them in the ambulance testified that they smelled no liquor on them. However, the question of in-

toxication as a contributing cause was emphatically alleged in the answer as a defense, and the two tavern-keepers' testimony showed that Gerken and Weber had had at least four 12-ounce bottles and one 14-ounce glass of beer apiece, and Hackbart one bottle less, in the two hours they had been in the two taverns, from which they left in a hurry, as they were late getting one of the parties home.

The word "intoxication" does not mean a drunken stupor, or drunkenness, but means any degree of intoxication which, under all the circumstances, proximately causes the doing, or refraining from doing, of any act which is classified as a negligent act.

In our opinion, the allegations in the answer, supported by the evidence of Chantry and Knopp, that just before the collision the driver of the Ford suddenly changed his course and drove directly into the front of the truck, required the court to set out this defense of intoxication in his summary of the allegations of the answer to the jury. Beer is included under the term "intoxicating liquor."

In 14 R. C. L. 727, sec. 3, it is said: "It is a familiar rule that the court is required to state to the jury all the issues joined by the pleadings upon which any testimony has been offered."

Our court has said many times: "It is reversible error for the trial court to fail to instruct the jury respecting the law that is applicable to the material issues that are raised by the pleadings and that are supported by the proof." Kimball v. Lanning, 102 Neb. 63, 165 N. W. 890. See, also, Carlson v. Roberts, 133 Neb. 166, 274 N. W. 473; Mackechnie v. Lyders, 134 Neb. 682, 279 N. W. 328; Sterns v. Hellerich, 130 Neb. 251, 264 N. W. 677.

In McGrath v. Nugent, 133 Neb. 237, 274 N. W. 549, it was held to be error for the trial court to fail to instruct on the issue of contributory negligence when raised by the pleadings and supported by the evidence. In that case there was no question but what the driver of the car and others had been drinking whisky, and that the effects of the liquor were evident.

In the opinion of the court, the trial court erred in omitting any reference to intoxication in setting out the defenses as pleaded in the defendants' answer, and that this error was in no way cured by requiring the plaintiff to file a remittitur of $900 as a condition for the overruling of the motion for new trial. Judgment reversed and new trial ordered.

REVERSED AND REMANDED.