FRANK BLANK, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

290 N. W. 464

FILED MARCH 1, 1940. No. 30724.

*Gordon Diesing,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Plaintiff, a guest in an automobile, owned and driven by Peter Redwelski, brought this action to recover damages for personal injuries sustained by him as the result of an automobile accident when the car in which he was riding collided with a repair truck belonging to the defendant. The cause was submitted to a jury, resulting in a verdict for the defendant. Plaintiff appeals.

The pleadings of the respective parties are sufficient to join the issues on the negligence pleaded therein and will not be here set out. The record discloses the following:

About 8 o'clock in the evening of February 26, 1938, the plaintiff was riding as an invited guest, seated at the right of the driver, Peter Redwelski, in his 1934 Chevrolet sedan, proceeding south on Twenty-fourth street in the city of Omaha. The street was dry, the night dark, cold and cloudy. The car proceeded past Twenty-fourth street and Poppleton avenue, toward Woolworth avenue, there being a gradual slope to the south. The car was six feet distant from the west curb of Twenty-fourth street on the right side of the south-bound street car tracks. When it approached the intersection of Twenty-fourth street and Woolworth avenue, having traversed about three-fourths of a block, at 20 miles an hour, its headlights set for city driving, throwing light for a distance of 50 feet ahead, plaintiff observed the truck approaching them. The headlights on the truck were not burning, and when the Chevrolet's lights disclosed the truck, plaintiff immediately exclaimed: "Look out, Pete, there is a car." At that moment the truck lights were switched on, blinding plaintiff. There was no torch burning in the telephone pole immediately in front of the Gurley house, which will be referred to later in the opinion, and there were no flares or wicks burning in the vicinity to warn of danger. There was north-bound traffic on Twenty-fourth street just before the accident. On cross-examination, the plaintiff testified that he had known Redwelski for six or seven years, had been in the car on two or three occasions within a month or so; did not see a street light

burning at Twenty-fourth and Woolworth avenue, and did not notice a street light on the east side of Twenty-fourth, approximately 100 or 150 feet from the intersection; nor did he notice lights in the filling station, located at the southeast corner of the intersection. Redwelski corroborated the testimony of plaintiff in detail. He stated that he was driving at a speed of 25 miles an hour.

Sebastian Sortino testified that on the evening in question he was driving south on Twenty-fourth street at a speed of 20 to 25 miles an hour, and when approaching the intersection of Twenty-fourth and Woolworth avenue, driving five or six feet from the west curb, his lights disclosed at a distance of 50 feet in front of him the street car truck, which was between the south-bound tracks and the west curb and standing stationary; he swerved his car to the right, barely missing a pedestrian; then turned the corner and parked on the north side of Woolworth; walked north on Twenty-fourth street, noticed the repair truck 15 to 20 feet from the corner north of Woolworth, between the west curb of Twenty-fourth street and the south-bound tracks. He was bound for the Gurley home, which was about 40· to 45 feet north of the intersection of Twenty-fourth and Woolworth. While he was standing on the third step of the Gurley home, he saw, 30 or 35 feet away, the Chevrolet car traveling south, about six feet from the west curb. The truck kept moving slowly toward the north, with no headlights burning. The Chevrolet suddenly swerved toward the curb; the lights of the truck flashed on, and the two cars collided. After the accident, the rear wheels of the Chevrolet were up against the curb, the car facing southeast. The truck was about five feet from the front of the Chevrolet north; the front bumper of the sedan was headed right into the left door of the truck. The witness testified that he saw no flares on the telephone pole, the only pole between the place of the accident and the corner. On cross-examination he testified that when he first observed the truck it was straddling the west rail of the south-bound tracks at a distance of about 15 feet from the north curb line of Woolworth avenue, standing stationary.

Frances Lenczowski testified that she was walking down Twenty-fourth street on the west side thereof, going south, and when about 100 feet north of Twenty-fourth and Woolworth she saw the truck "in the middle of the south-bound car line and the curb," between the west curb and the south-bound tracks; the truck, without headlights burning, was moving slowly north toward her; she saw the Redwelski car proceeding south; saw it swerve to the right; saw the truck flash on its lights. She testified that after the accident the "rear end of the car was facing this telephone pole touching the curb almost;" the front of the Chevrolet "was facing at an angle southeast;" the accident happened about 30 to 35 feet from the intersection of Woolworth and Twenty-fourth. On cross-examination the witness stated that the lights in the filling station were burning; that there was no street light at the intersection.

J. W. Gurley testified that he was looking out of a south window in his home, which faces east on Twenty-fourth street and is 35 or 40 feet north of the intersection of Twenty-fourth and Woolworth; he noticed the flash from the trolley wire that made connection with the rail in the intersection, near the southwest corner, on which corner are located a grocery store and a street light. The street light was not burning. He could see from the lights in the filling station the men working on the trolley wire; "saw some one out with a stick or something that looked as if they were trying to rake the trolley wire away from the rail;" the repair truck was straddling the west rail of the south-bound track; he watched at the window for a moment or so; then left the window, subsequently heard a crash, went to the door and met Sortino. After calling for an ambulance, he went out into the street, saw a Chevrolet automobile standing in the street, headed toward the southeast; the rear wheels of the car were near the west curb of Twenty-fourth street, directly in front of his home; the truck was five or six feet north of the left side of the Chevrolet; there were no flares burning and no torch burning on the telephone pole.

The testimony of defendant's witnesses follows: There was no "outrage of lights" or replacement thereof in the vicinity of Twenty-fourth and Woolworth on the night in question. The street lights were 400-candle power. The repair truck was a ton and a half truck, painted yellow, with a tower on it, averaging about 12 feet in height and, when raised, 20 feet. When the truck arrived to repair the wires, a flare, producing a red flame, was placed in the telephone pole in front of the Gurley home about seven feet distant from the ground. A holder on each side of the lights on the truck contained a red flag which could be seen by the lights. The lights on the truck were burning at all times, as were the street lights in the vicinity of Twenty-fourth and Woolworth and the lights in the filling station. The trolley wire to be repaired was broken about 10 feet north of the south turn of Woolworth avenue and was down for a distance of 90 to 100 feet, and required replacement from the first north span. One of the workmen for the defendant stood 12 to 15 feet in front of the truck in the center of the south-bound tracks. Witnesses for the defendant testified that at the time of the accident they could see the Chevrolet car coming from the north for a distance of 100 to 150 feet, straddling the west rail of the south-bound tracks; that it did not slacken its speed or change its course, and when 10 or 12 feet from the workman in front of the truck his son, standing on the sidewalk, called for him to look out, and he stepped back; the Chevrolet barely missed him and proceeded directly into the truck, which was standing on the rails of the south-bound track, headed north, with the platform of the tower right beneath the trolley wires, and the brakes on the truck set. The truck driver testified he did not flash on his lights at any time; that the cab of the truck was opposite the pole on the west side of the street; that automobiles passed between the truck and the west curb while it was standing there. The distance that the truck was knocked back north at the time of the impact varied from 15 to 20 feet, according to defendant's witnesses. The Chevrolet swung around toward the west and south, about

even with the telephone pole, stopping with the rear wheels on the curb line. The repair truck stopped with its wheels to the north. The left end of the front axle of the truck was badly bent; the wheel would not turn, and the left front wheel was cramped under the frame; the chassis was bent, and the steering wheel would not operate. To clear the street for traffic, it was necessary to drag the truck. It was not moved until the police arrived and took measurements, and it was then taken away by defendant's wrecker. The light on the southwest corner of Twenty-fourth street and Woolworth avenue was burning, as well as the lights in the grocery store and in the filling station.

The measurements of distances, as shown by exhibit 42, made to scale of one inch to 10 feet, disclose the distance from curb to curb on Twenty-fourth street, running north and south, to be 39 feet, 3 inches, with double car tracks running through the center of the street, leaving a distance, from the east rail of the north-bound track to the curb, of 12 feet, 8 inches, and, from the west rail of the south-bound track to the curb, 12 feet, 11 inches, on the west side. A trifle over 48 feet north of the intersection in question is the pole directly in front of the steps of the Gurley home, where the flare was presumably placed, and this location was also the scene of the accident. On the southwest corner of the intersection is the grocery store and in front of it an overhead street light. There is also a light on Twenty-fourth street north 144 feet distant from the filling station. The proximate distance from the grocery store to the scene of the accident would not exceed 80 feet. Estimates of the proximate distance between the filling station and the scene of the accident vary from 90 to 100 feet.

By measurement, a person standing inside of the Gurley home, looking south to a place in the center of the south-bound tracks, would be looking from a distance of 82½ feet to discern an object. Gurley testified that he discerned at that distance, from the lights in the filling station, a man with a stick lifting a wire. The witness Woodward, employed by the police department, arrived at the scene of

the accident about five minutes thereafter, made some notes and prepared a drawing, or map, received in evidence. He testified that the distance from the right front fender of the Redwelski car, as it faced slightly to the southeast, to the left front fender of the truck was 22 feet, 2 inches; that the left rear wheel of the truck was 12 feet, 2 inches, from the west curb, and that about half of the Redwelski car was on the west sidewalk. To recall the testimony of Redwelski, he did see the truck within a distance of 50 feet, applied his brakes, then released them, and attempted to turn to the right to avoid the accident. He further stated that he could stop his car within a radius of 35 to 40 feet, going at a speed of 20 to 25 miles an hour.

The left fender of the Redwelski car collided with the left front fender of the truck. The jury had the benefit of the testimony showing that men were working on the truck tower with appliances, repairing the trolley wires, at the time of the accident, and whether or not, if the position of the truck was such as testified to by plaintiff's witnesses, the men could have accomplished the work.

Plaintiff contends that the court erred in instructing the jury on the contributory negligence of the plaintiff, when, in fact, the evidence was insufficient to show the plaintiff guilty of any negligence. In instruction No. 5 the court properly instructed: "The negligence of the driver of the car in which the plaintiff was riding is not imputed to the plaintiff." The court then, in the same instruction, instructed with reference to the driver's negligence being the proximate and sole cause of the accident without any negligence on the part of the defendant, and in instruction No. 9 gave the comparative negligence rule, as applied to the plaintiff and the driver of the defendant's truck; likewise, instruction No. 12, wherein the jury were told that, if they found plaintiff to have been negligent but not to the extent to defeat recovery, then they would be privileged to reduce the amount of recovery in the proportion which plaintiff's negligence bears to the total negligence of plaintiff and defendant.

We have extensively reviewed the facts as disclosed by the record and fail to find any evidence that would warrant the submission to the jury of the issue of contributory negligence on the part of this plaintiff, and we are not privileged to determine upon what theory the jury found for the defendant; that is, whether it was the contributory negligence of the guest or the negligence of the driver of the car that was the direct and proximate cause of the injuries sustained by the guest. If the jury were permitted to pass upon the question of the contributory negligence of the guest, under the circumstances of this case, and predicate their verdict on such instructions, then the instructions were prejudicial to the substantial rights of the plaintiff. This court has, on repeated occasions, announced that where the evidence fails to show contributory negligence on the part of a plaintiff the issue should not be submitted to the jury. This principle of law is so well established that citation of authorities is deemed unnecessary.

Other assignments of error need not be discussed.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.