MABEL A. YORKE, APPELLEE, V. ELDRED SEDDON ET AL., APPELLANTS.

299 N. W. 333

FILED JULY 18, 1941. No. 31049.

*Baylor, Tou Velle & Healey* and *Kirkpatrick & Dougherty,* for appellants.

*Sterling F. Mutz, contra.*

Heard before PAÏNE, CARTER and MESSMORE, JJ., and ELDRED and TEWELL, District Judges.

PAÏNE, J.

This is an action brought for personal injuries suffered in a collision between a Dodge coupé and a gasoline transport. The jury returned a verdict for $750.28. Motion for new trial was overruled. Defendants appeal.

The plaintiff, Mabel A. Yorke, a minor, by Calvin Yorke, her father and next friend, brought suit against Eldred Seddon and Egan Kastrup, alleging in the amended petition that Egan Kastrup was the owner of the gasoline transport, and that Eldred Seddon was his employee, and the driver of the transport at the time of the accident. Plaintiff alleged that she was a passenger in a 1939 Dodge coupé being driven by Raymond I. Pierson, Jr., north on highway No. 76, at a point nine and one-half miles north of Exeter in York county on the afternoon of March 5, 1939, and that suddenly and without warning the gasoline transport turned to the east half of said graveled highway and collided with the Dodge coupé, inflicting serious injuries upon the plaintiff.

Plaintiff charges as acts of negligence that Eldred Seddon was negligently operating his transport on the left side of the highway, being in the line of traffic of the Dodge coupé; that he did not sound his horn or signal with his hand before turning sharply to the left in their line of traffic; that he attempted to turn across the highway in a place other than at an intersection; that he had operated the transport in violation of the laws of Nebraska in driving it upon the left side of the highway.

It is further alleged that, as a result of the collision, plain-

tiff was thrown more than 30 feet from the Dodge coupé, and sustained a twisted back, injuries to neck and limbs, internal injuries to kidney, liver and diaphragm, and suffered intense pain and agony.

The defendants for answer to the petition allege that Raymond I. Pierson, Jr., driver of the car, and plaintiff were guilty of contributory negligence which contributed to the collision; that the careless and negligent acts of Raymond I. Pierson, Jr., were that he was under the influence of intoxicating liquor, that he did not maintain a lookout for the approach of automobiles, that he drove the Dodge coupé on the wrong side of the highway, that he failed to yield the right of way, and failed to stop the Dodge coupé before colliding with the transport; that the plaintiff rode in the Dodge coupé when she knew, or should have known, that said Pierson had drunk liquor and was incapable of managing and controlling the car; that plaintiff failed to see the gasoline transport, or, if she did see it, she failed to warn Pierson of it.

In brief, the evidence discloses that the accident in question happened on Sunday, March 5, 1939, at about 6 o'clock p. m., on a clear, cold day; that plaintiff started from Lincoln with Pierson to go to Harvard to visit a friend and bring her back to Lincoln; that Pierson drove his Dodge coupé to Exeter, at which point he left highway No. 6, and turned off to highway No. 76; that he went into a farmer's house and inquired the way to Seward; that the accident occurred five or six miles beyond this farmer's home; that the graveled road was 24 feet wide at the place of the accident.

There was a slight ridge of gravel along the side of the graveled portion of the road, and there was a light fall of snow on the ground. The evidence disclosed that the gasoline transport was going south at about 35 miles an hour and the coupé was going north at about 30 to 35 miles an hour. It was also testified that as the coupé came over the top of a little hill it was traveling about in the center of the road; that the driver took his eyes from the road for a

moment and looked down into the interior of the car, swerving slightly to the left-hand side of the road, but immediately afterwards turned back on the right, or east, side of the road, and the plaintiff testified that he never again drove over the center line, but she said that the transport just before the collision suddenly turned over to the east side of the center line and struck the left front end of the coupé head-on.

The testimony further shows that at the time of the collision the coupé was at least two feet over on the east side of the center line of the road at the place it should be; that after the collision both vehicles stopped with their wheels in the ditch on the east side of the road; that the marks in the road showed that the brakes were applied on the transport before it started to turn off to the east side of the road; that the place where the coupé momentarily went over the middle line to the west side of the road, as it came over the hill, was distant about 110 feet from the transport. As the result of the collision, Pierson was thrown under the wheels of the transport and instantly killed.

Eldred Seddon, a young man 25 years of age, who was driving the transport, differs with this statement of facts, and testifies that he first saw the coupé about a quarter of a mile away; that just as it came over the hill it made the slight swing to the west, as plaintiff says, and then gradually swung back to its side of the road, and so continued until it was about 120 feet from the transport, when it headed directly for the transport; that he immediately headed the transport toward the east, or wrong, side of the road, when the coupé suddenly turned back toward the east, and he admits that the vehicles came together on the east side of the center line of the road.

The defendants' main defense was that Pierson was intoxicated, and they produced several witnesses on that issue. Chester Collins testified that before leaving town Pierson came into the hamburger stand where Collins was working; that he fell off the stool at the counter; that he ordered five sandwiches, took a bite out of one, left them

there on the counter, had difficulty picking up his change from the floor, started the wrong way when he went out the door, and then turned and went back the other way to his car; that he had difficulty in walking, was weak on his feet, that his eyes were bloodshot and face flushed, and in the opinion of the witness he was intoxicated. On cross-examination it was brought out that they had an argument in the hamburger stand, and Collins refused to cash a check for Pierson, and that Pierson got rough and used strong language; that Collins did not see any liquor, and Pierson did not drink any liquor when he was in the hamburger stand.

Robert VanBoskirk, of Lincoln, a certified public accountant, 45 years old, testified that he was driving toward Fairmont on highway No. 6 with his family, and followed the tan-colored Dodge coupé driven by Raymond I. Pierson, Jr., for a mile or two; that it was between 5:00 and 5:30 p. m. on March 5, 1939; that the coupé wobbled from one side of the road to the other, and went off both shoulders, and as it went off on the sides the mud splashed up.

Mrs. Leo R. Koehn testified that she lived on a farm two and one-quarter miles north of Exeter on highway No. 76; that on the Sunday evening in question she was in the kitchen getting supper, and Pierson frightened her by walking into the kitchen without knocking, and asked her the road to Seward. She testified that he did not seem to have control of his feet; that he could hardly walk; that he kept shuffling around; that he talked thick; that in her opinion Pierson was intoxicated.

Leo R. Koehn, her husband, was standing on the north side of the house, talking with Edgar W. James, at the time, and he testified that Pierson did not walk very well, and was not capable of driving a car.

Edgar W. James testified that he lived five miles north of Exeter; that between 5 and 6 o'clock he was at the farm home of Mr. Koehn; that he saw a man staggering toward the car and get into it and drive off fast, and he followed him for a way, but he got behind because the

driver of the coupé ran it between 45 and 50 miles an hour.

The plaintiff, in opposition to this testimony, called Mrs. J. M. Taylor, who resides with her husband and three small children in Lincoln. She testified that she had known Raymond I. Pierson, Jr., and Mabel Yorke since October, 1938; that they had stayed at her home the Saturday night before the accident; that Pierson slept on the studio couch in the living-room; that about 8:30 Sunday morning Pierson took Mabel Yorke to her home and came back for breakfast and stayed to lunch; that Pierson left her home between 1:30 and 2:15 that afternoon; that he had played out in the snow with the children, making a snow man; that Saturday night all of them had a little beer, rye bread and cheese for a lunch; that that was all that she saw Pierson drink; that he did not have any intoxicating liquor Sunday morning, did not drink any, and did not have any in his pocket that she saw; that he was normal and very happy when he left there Sunday after lunch, and he was going to pick up Mabel and go to Harvard.

Mrs. Taylor also testified that at some preceding time, she had understood, Pierson had had some personal injuries which caused him to walk in a shuffling manner. She said: "I would say it was a very peculiar walk, what one would call a drunken sailor walk." She said that he always walked that way except when he was dancing.

Plaintiff testified that she was 18 years of age at the time of the accident; that her home was near Clearwater, Antelope county, Nebraska, where her father was a farmer; that at the time of the accident she was taking home economics in the Nebraska College of Agriculture; that Pierson's nickname was "Bus;" that he was about five feet three inches tall; that she had kept company with him from September, 1938, and that they were engaged to be married; that he bought this tan-colored Dodge coupé in the fall of 1938, and that they went riding together frequently; that a student living at the same house, whose home was in Harvard, Nebraska, had gone home on Friday for the week-

end, and invited her out to spend Sunday evening at her home at Harvard, and Pierson offered to take her out.

On the day of the accident, she testified, Pierson called for her in the afternoon, then drove to a hamburger stand on North Twelfth street, got some hamburgers, and they were gone before they started out; that they then drove to a filling station at Sixteenth and N streets, where he bought gasoline, and then drove out on highway No. 6, without stopping until they reached Exeter, at a speed of 30 to 35 miles an hour. He stopped at a filling station at Exeter and got a little more gas, and then stopped at a café in Exeter to get some cigarettes, and then turned north on highway No. 76. He stopped at a farmhouse north of Exeter, and was going north on No. 76 when the collision occurred. Mabel Yorke was recalled on rebuttal, and testified that from the time he called for her Sunday afternoon until the accident occurred he did not drink; that she never saw any intoxicating liquor at all, either in the car or any place; that the last liquor that she saw him drink of any kind was a little beer with the lunch on Saturday night at Mrs. Taylor's.

Eldred Seddon, defendant and driver of the transport, testified he first saw the coupé when it was coming over a hill about a quarter of a mile away, and as it came over the hill the coupé made a slight swing to the west side of the road; gradually swinging back to the east side of the road, it continued on that side until it was about 120 or 130 feet away from the transport, when it headed right for the transport, and the speed of the coupé was not less than 40 and the speed of the transport was 30 to 35 miles an hour; that when the witness turned the transport toward the east the coupé was headed right toward him, but after the transport had turned, the coupé suddenly turned back toward the east, and the vehicles came together a little east of the middle of the road.

Sheriff Brock, of York county, also testified to the tracks made by the two vehicles, and furnished a chart as an exhibit.

Several answers of the plaintiff on cross-examination are as follows: "Q. Did you attempt to warn Mr. Pierson of the approach of the transport? A. No. * * * Q. Well then you don't know where it was that Mr. Pierson turned the car back toward the east side of the road, do you? A. Not definitely, no. * * * Q. The reason you can't state the distance is because you were not paying attention to the driving? A. I wasn't, no. Q. And, of course, you don't know whether Mr. Pierson was paying strict attention, do you? A. Not definitely. Q. Not definitely, is that your answer? A. Yes."

With this evidence the trial court gave instruction No. 16, reading as follows: "You are instructed that it is unlawful for a person to drive and operate an automobile upon the highways of this state while under the influence of intoxicating liquors, and if you find from a preponderance of the evidence that Raymond I. Pierson, Jr., while driving and operating his Dodge automobile, in which plaintiff was riding as a passenger, at and prior to the time of the collision between said motor vehicles, had been drinking intoxicating liquors, and was under the influence thereof to such an extent that it interfered with his operation of said automobile, then you will take the fact that he was so under the influence of intoxicating liquor in consideration in determining whether he was guilty of any of the act or acts of negligence as alleged in defendants' answer and set out in Instruction No. 2 hereof, and whether such negligent act or acts were the proximate cause of the collision between said motor vehicles, and if you find such act or acts of negligence were the proximate cause of said collision between said motor vehicles, then your finding and verdict should be for the defendants."

In this instruction it is clear that the trial judge instructed the jury that, if they found that Pierson was under the influence of intoxicating liquor, and found that this was the proximate cause of the collision, then their verdict should be for the defendant.

Defendants insist that the court failed to submit the

issue of plaintiff's contributory negligence, even though defendants did not request that one be given, and ask for a reversal because of that fact. It is insisted that plaintiff did not utter a protest, or warn the driver of her car, was not watching the road, and that this negligence on her part prevents a recovery, for the standard of duty of an invited guest is the same as the driver's.

The plaintiff insists that it is error to submit the issue of contributory negligence when the evidence is insufficient to show that plaintiff was guilty of such negligence. *Blank v. Omaha & C. B. Street R. Co.,* 137 Neb. 632, 290 N. W. 464.

In the answer it was positively alleged that the careless and negligent acts of the plaintiff were the proximate cause of said collision and damage. The evidence of the defendants tended to support this charge of contributory negligence on the part of the plaintiff, and in *Hackbart v. Rohrig,* 136 Neb. 825, 287 N. W. 665, this court said: "It is the duty of the court to instruct the jury upon the issues presented by the pleadings and the evidence, whether requested so to do or not." See, also, *McGrath v. Nugent,* 133 Neb. 237, 274 N. W. 549; *McCulley v. Anderson,* 119 Neb. 105, 227 N. W. 321.

In the opinion of the court, the trial court erred in failing to submit to the jury an instruction on the issue of contributory negligence of the plaintiff.

REVERSED.