PETER J. LONG ET AL., APPELLEES, V. JOHN H. KRAUSE ET AL., APPELLANTS.

FILED JANUARY 19, 1921. No. 21214.

1. **Fraud: MATERIALITY.** Where a purchaser, having secret knowledge of valuable mineral deposits in the waters of a private lake on land purchased from a vendor who considered the waters of no value, is sued by the latter for fraud resulting in the sale of the land, the materiality of the deception charged does not depend on its effect on the purchase price, but upon its influence on the mind of the vendor in entering into the contract of sale.

2. ——: **VENDOR AND PURCHASER: MISREPRESENTATIONS.** A stranger, having secret knowledge of valuable mineral deposits in the waters of a private lake on land, may purchase the land without disclosing his superior knowledge, but a slight imposition on his part may terminate his privilege of silence; and, if he speaks falsely on matters relating to his secret knowledge and to the purpose of his purchase and thus deceives the owner into making a sale, he may be held liable for resulting damages.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*John J. Sullivan, John M. Macfarland, George B. Thummel* and *Lee Basye,* for appellants.

*Thomas Lynch* and *Byron G. Burbank, contra.*

ROSE, J.

This is an action to recover damages in the sum of $992,000 on account of the fraud of defendants in inducing plaintiffs to sell and transfer to them a 640-acre ranch in Sherdian county for $8,000. The difference between the damages and the sale price is based on the value of potash in the water of a private lake covering about 240 acres of the land. Plaintiffs allege that, without knowledge of the potash in the water, they regarded the lake as a detriment, and were induced by the fraud of defendants, who knew the facts, to sell and transfer to them the ranch, including the lake, without any consideration for the potash. Defendants denied the fraud charged and pleaded good faith in the negotiations and purchase. Upon a trial of the issues the jury rendered a verdict in favor of plaintiffs for $75,000. From a judgment thereon defendants have appealed.

The controlling question on appeal is the sufficiency of the evidence to sustain the verdict. Defendants contend that there is no evidence of actionable fraud; that plaintiffs fixed their own price, which was paid; that there was no concealment; that there was no misstatement of any material fact; that defendants did not know the contents of the water; that it had no commercial value; that plaintiffs and defendants had the same means of acquiring knowledge; and that clear and satisfactory evidence of the fraud charged is wanting. The evidence and the argument from the standpoint of defendants have not escaped attention, nor have precedents and divergent views of the law been overlooked. The position of defendants would be unassailable, if the testimony in their behalf could be accepted on appeal without question; but the sufficiency of the evidence to sustain the verdict must be determined by the proofs tending to make a case in favor of plaintiffs, since the jury found the issues of fact in their favor.

The circumstances surrounding the negotiations are material to the inquiry. Plaintiffs were husband and wife, and with two small children lived on the ranch in contro-

versy.  They were without practical knowledge of chemis-
try.  They lived in a sparsely settled country and were
engaged chiefly in stock-raising.  Their nearest neighbor
was more than two miles away.  They were 12 miles from
a railroad and 40 miles from the county seat.  They had
no telephone and no rural mail service.  The snow was a
foot deep and the weather was cold.  Travel by automobile
was suspended.  Peter J. Long, plaintiff, had been on a
saddle-horse looking after his stock.  Chilled by the cold,
he came home in the evening and found defendant John H.
Krause there.  The two men had met before, but were
practically unacquainted, though their ranches were only
five miles apart.  There is believable testimony from which
the following facts and conclusions may be inferred:

Peter J. Long, plaintiff, managed three sections of
contiguous land, but two of the sections were owned by his
father, who resided in California.  A small portion of the
lake was on a section owned by the latter.  Krause said
he heard the land was for sale, and was told that plaintiff's
had never so stated to any one.  Krause said he wanted the
land for grazing and other stock-raising purposes and ask-
ed Long to put a price on the three sections.  After some
reflection Long said he would take $17,000.  Krause in-
sisted that was too much, owing to the amount of water—
240 acres of lake—and offered $13,000.  This was refused.
An offer of $15,000 followed and was likewise rejected.
Krause finally said he would pay $17,000.  Long, in the
event of a sale, wanted a lease permitting him to retain
possession for a year to dispose of his live stock.  This was
agreeable to both.  Long started to ask about a potash
plant at Hoffland, about 14 miles away, and Krause in-
timated that the promoters were not doing very much
there "except having a little smoke."  Long accepted a
check for $300, and agreed to transfer to defendants the
title to the three sections for $17,000, with the understand-
ing that the latter would lease the lands to plaintiffs for a
year for $700.  These negotiations occurred late in Decem-

ber, 1915, and the deeds and the lease were delivered February 3, 1916. The lease contains the provision that defendants "reserve full rights to all the lakes on said lands for any purpose for which they may desire to use them, during the life of this lease, together with full rights to sublet their rights to said lakes." Plaintiffs had no knowledge of this reservation when the lease and the deeds were delivered. Of the purchase price plaintiffs received $8,000 for their section and Long's father received $9,000 for his two sections. Defendants knew that the lake contained valuable deposits of potash, and plaintiffs did not. Plaintiffs believed the statements of John H. Krause and relied on them. Otherwise the sale for $17,000 would not have been made. Within a short time defendants sold the lands in the three sections for $15,000, but retained the lake, which is now connected by a pipeline with a potash plant at Antioch, where there is a railroad station. Defendants have an interest in the plant mentioned. When plaintiffs executed and delivered their deed the value of the lake for potash, if the potash were free on board the cars at Antioch, would aggregate $480,000. The jury believed testimony from which the facts and conclusions narrated are inferable.

The question is: Did plaintiffs prove actionable fraud? This is not the case of an owner of land trying to sell it. It is the case of a stranger, with secret knowledge of valuable mineral deposits in the waters of a private lake on land, inducing the owner, without such knowledge, to sell the water for little or nothing. From the standpoint of inducing a sale under the circumstances outlined, Krause employed the artifices of fraud in at least three material respects. (1) He pretended that he wanted the land for grazing and other stock-raising purposes. Had he told the truth, namely, that he wanted the three sections of land to get control of the 240-acre lake, he would have aroused the interest of plaintiffs in the water which had been considered by them to be a detriment. Having of his own volition spoken when speech was not required, he

should have confined himself to the truth. His passive privilege of remaining silent for the purpose of availing himself of the fruits of superior knowledge did not include affirmative aid amounting to deceit. (2) He intimated that the ranch would be more valuable, if it were not for the lake, whereas the great value of the lake, on account of the deposits of potash therein, was the real object of his, negotiations. Since he voluntarily spoke on that subject, without any legal obligation to do so, it was incumbent on him to be truthful and to say nothing to deceive plaintiffs. (3) By a false insinuation he led plaintiffs to believe that the plant in course of construction for the evaporation of valuable lake waters on a commercial scale at Hoffland amounted to little or nothing. That the truth would have prevented a sale for $17,000 is fairly inferable.

In cases like this the materiality of the deception does not depend on its effect on the purchase price, but upon its influence on the minds of the vendors in entering into contracts of sale. *Masterton v. Beers*, 29 N. Y. Super. Ct. 368; *Stewart v. Wyoming Cattle Ranche Co.*, 128 U. S. 383.

The controlling principle, applicable to the evidence accepted by the jury as revealing the truth, was stated by Lord Chancellor Eldon a century ago, as follows: ·

"The court, in many cases, has been in the habit of saying, that where parties deal for an estate, they may put each other at arm's length; the purchaser may use his own knowledge, and is not bound to give the vendor information of the value of his property. * * * If an estate is offered for sale, and I treat for it, knowing that there is a mine under it, and the other party makes no inquiry, I am not bound to give him any information of it; he acts for himself, and exercises his own sense and knowledge. But a very little is sufficient to affect the application of that principle. If a word, if a single word be dropped which tends to mislead the vendor, that principle will not be allowed to operate." *Turner v. Harvey*, 1 Jac. (Eng.) *169, *178.

Long v. Krause.

A few years later the same principle was adopted by the supreme court of the United States. A purchaser, in negotiating for a large quantity of tobacco, was asked by the seller if he had received any news to enhance the price. The purchaser had just heard such news, having learned of the signing of the Treaty of Ghent, a fact of which the seller was ignorant. Whether fraud had been practiced by the purchaser was held to be a question for the jury. In an opinion by Chief Justice Marshall it was held:

"The question in this case is, whether the intelligence of extrinsic circumstances, which might influence the price of the commodity, and which was exclusively within the knowledge of the vendee, ought to have been communicated by him to the vendor? The court is of opinion that he was not bound to communicate it. It would be difficult to circumscribe the contrary doctrine within proper limits, where the means of intelligence are equally accessible to both parties. But at the same time, each party must take care not to say or do any thing tending to impose upon the other." *Laidlaw v. Organ,* 2 Wheat. (U. S.) 178.

While the latter case arose in Louisiana under the civil law, a principle of the common law is stated in the opinion. The same doctrine has been adopted in many of the states. *Bench v. Sheldon,* 14 Barb. (N. Y.) 66; *Prescott v. Wright,* 4 Gray (Mass.) 461; *Crompton v. Beedle,* 83 Vt. 287; *Brager v. Friedenwald,* 128 Md. 8; *Bowman v. Bates,* 2 Bibb (Ky.) 47; *Akers v. Martin,* 110 Ky. 335; *Smith v. Beatty,* 2 Ired. Eq. (N. Car.) 456; *Stackpole v. Hancock,* 40 Fla. 362. Taking these views of the facts and the law, no error has been found in the record.

AFFIRMED.