Elva Remmenga, appellee and cross-appellant, v.
Virgil Selk, appellant and cross-appellee.

34 N. W. 2d 757

Filed November 15, 1948.   No. 32407.

*V. H. Halligan,* for appellant and cross-appellee.

*Dent & Plummer, Beatty, Clarke & Murphy,* and *Earl E. Morgan,* for appellee and cross-appellant.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This action was instituted in the district court for Lincoln County by Elva Remmenga, as plaintiff, and against Virgil Selk, as defendant. The purpose of the action is to recover damages resulting from injuries which plaintiff received in an accident allegedly caused by the negligence of the defendant in the operation of his automobile.

Plaintiff's petition sets forth two causes of action. The first is based on injuries which she personally suffered as a result of the accident. The second is an assigned claim from her husband, James Remmenga, for medical, surgical, hospital, nursing, household, and traveling expenses which he incurred in her care and treatment and for the loss of her services and consortium as a result of her injuries.

Both causes were submitted to a jury. The jury returned its verdict for the defendant. Plaintiff then filed a motion in accordance with the provisions of section 25-1315.02, R. S. Supp., 1947. This motion related to both causes of action. She therein asked the trial court to either set aside the verdict and enter a judgment therein in accordance with her motion for a directed verdict or grant a new trial. The trial court sustained her motion for a new trial as to the first cause of action but otherwise overruled said motion. From this ruling the defendant appealed and the plaintiff has cross-appealed.

Because there has been an appeal and a cross-appeal it will be more convenient to refer to the parties as they appeared in the district court, that is, as plaintiff and defendant.

In submitting the case to the jury the court, in both causes of action, submitted the issue of contributory negligence; however, it only granted a new trial as to the first cause of action because of having done so. Consequently, the appeal presents the question of whether or not the evidence justified the submission of

that issue as to the first cause of action. In considering this question certain basic rules are applicable.

"In a law action where the case is presented to the jury under proper instructions, a verdict based upon conflicting evidence will not be set aside on appeal unless clearly wrong." Scott v. New England Mutual Life Ins. Co., 128 Neb. 867, 260 N. W. 377.

In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom. Long v. Krause, 105 Neb. 538, 181 N. W. 372; Central Granaries Co. v. Nebraska L. M. Ins. Assn., 106 Neb. 80, 182 N. W. 582.

Where the evidence is conflicting and from the facts and circumstances proved reasonable minds might draw different conclusions concerning any negligence or lack of negligence, as well as comparative and contributory negligence, then the trial court should submit such issues to the jury. McDonald v. Wright, 125 Neb. 871, 252 N. W. 411; Parks v. Metz, 140 Neb. 235, 299 N. W. 643.

Of course, where there is no evidence to support the defense of contributory negligence it should not be submitted to a jury and to do so is prejudicial error requiring the granting of a new trial. Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439.

As stated in Blank v. Omaha & C. B. Street Ry. Co., 137 Neb. 632, 290 N. W. 464: "This court has, on repeated occasions, announced that where the evidence fails to show contributory negligence on the part of a plaintiff the issue should not be submitted to the jury." See, also, Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Hofrichter v. Kiewit-Condon-Cunningham, 147 Neb. 224, 22 N. W. 2d 703, 164 A. L. R. 1256.

The record discloses that for three or possibly four years prior to December 31, 1945, the plaintiff and her husband James, together with two other couples, namely,

John and Maxine Remmenga and Mr. and Mrs. L. R.
(Jack) Seaman, had been going to North Platte,
Nebraska, to spend New Year's eve; that prior to
December 31, 1945, they again planned to do so and on
that date did go to North Platte for that purpose. On
the last occasion they had invited Richard Rasmussen, a
single man, to go with them. He did so, using his car
for that purpose. All these people live in or near
Elwood, Nebraska. Elwood is some 70 miles from North
Platte.

To avoid repetition it should be stated that all cities
and towns herein referred to are in Nebraska.

Rasmussen, whose car they used, drove to North
Platte. They left Elwood about 5:30 p. m. and arrived in
North Platte about 7 p. m. Rasmussen's car was a 1938
Tudor Ford and the motor thereof was apparently not in
too good condition because on the way to North Platte
they had to stop at Gothenburg and add three quarts of
oil and on their way home, as will hereinafter be more
fully explained, they stopped some 4½ to 5 miles east of
Maxwell to put in additional oil. After their arrival in
North Platte they had dinner at a restaurant where they
had previously made reservations. About 9 p. m. they
went to a dance. They remained at the dance, except for
intermission, until after midnight. Shortly after mid-
night they left to return to Elwood.

In returning to Elwood plaintiff's husband drove the
car. Rasmussen and Seaman, in that order, also occupied
the driver's seat. John Remmenga, Maxine Remmenga,
Mrs. Seaman, and plaintiff, in that order, occupied the
back seat. It is not clear as to whether Rasmussen asked
James Remmenga to drive or whether he suggested driv-
ing but, in any event, there is no question but that he was
driving Rasmussen's car on the return trip from North
Platte to Elwood.

From this evidence, which is undisputed, there is no
question but that plaintiff was riding in the car of Ras-
mussen as a guest and the trial court correctly, as to the

first cause of action, instructed the jury that the negligence, if any, of James Remmenga, the driver, was not imputable to her.

The negligence of a husband while driving an automobile, in which his wife is a guest, may not be imputed to her. Stevens v. Luther, 105 Neb. 184, 180 N. W. 87; Gleason v. Baack, 137 Neb. 272, 289 N. W. 349; Crandall v. Ladd, 142 Neb. 736, 7 N. W. 2d 642.

Nor is his negligence, if any, imputable to her on the basis that the parties were engaged in a common or joint enterprise. With reference to the basis for such responsibility we said in Hofrichter v. Kiewit-Condon-Cunningham, *supra*, the following: " 'Where an occupant of a motor vehicle is engaged in a common or joint enterprise with the driver and has an equal right to direct and control the operation of the vehicle, the contributory negligence of the driver is imputable to the occupant. This is so although one takes no actual control while the other is driving. To constitute occupants of a motor vehicle joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right to direct and control the conduct of each other in the operation of the vehicle.' 42 C. J., Motor Vehicles, § 957, p. 1179. * * * 'The test of a joint enterprise between the driver of an automobile and another occupant is whether they were jointly operating and controlling the movements of the vehicle or had an equal right to do so. * * *.' Illingworth v. Madden, 135 Me. 159, 192 A. 273, 110 A. L. R. 1090." And, as stated in Alperdt v. Paige, 292 Pa. 1, 140 A. 555: "To charge with contributory negligence on the ground that the party injured was engaged in a joint undertaking, something more must be shown than that the parties were riding together. It must further appear that the passenger had some voice in the control of the vehicle, so as to make it subject to common command, as well as possession: Hoffman v. P. & L. E. R. R. Co., 278 Pa. 246; McLaughlin v. P. R. R. Co., 252 Pa. 32."

There is nothing in the record that would in any way bring the plaintiff within the scope of this rule.

Upon the return of this group from North Platte they traveled east on U. S. Highway No. 30. They had passed through Maxwell, which is some 13 miles east of North Platte, and had proceeded east from there some 4½ to 5 miles when Rasmussen noticed the oil gauge on his car was not functioning. He asked the driver to stop so he might put some oil in the engine. It appears that he carried oil in the trunk for that purpose. While there is a dispute in the record, for witnesses in behalf of plaintiff testified they parked their car partly on the shoulder, leaving only the left wheels of the car on the surfaced highway and that they left the lights, both front and rear, burning; nevertheless, there was competent evidence from which the jury could have found that the driver, in parking, stopped his car on the south lane of traffic, near the south side thereof, and turned off all lights before getting out. There was, however, all of the north lane and part of the south lane, north of the car, open for travel and amply sufficient for any car to pass.

It should here be stated that U. S. Highway No. 30 at this point is a level, straight road with good shoulders of sufficient width on which to park a car; that it is straight for at least half a mile in either direction; that it runs in an east-west direction; that the driving surface is of concrete with a black center line; and that each driving lane is ten feet in width.

After stopping the car the driver got out on the left side. He was immediately followed by Rasmussen. Rasmussen asked for a flashlight that was in the glove compartment of the car. Seaman took it from the compartment and handed it to Rasmussen. Rasmussen gave the flashlight to Remmenga. They then proceeded to the back of the car, Remmenga holding the flashlight and Rasmussen proceeding to unlock the trunk. While these parties were going to the back of the car to get oil for

the purpose of putting it in the motor the other five people remained in the car.

The driver testified that as they were going to the back of the parked car he noticed two cars approaching from the west; that when he first noticed them they were up the highway a distance somewhere between a half mile and a mile; that he kept watching these cars approach; that they were apparently abreast of each other; that he waved his flashlight to warn the approaching cars; that he watched them until they were so close that he thought the one on the south side could not avoid hitting their car; that he then shouted to the others in the car to look out that they were going to be hit; and that he then jumped into the ditch that was along the side of the highway. The oncoming car did hit their car. The accident happened very shortly after they parked. There was not sufficient time for anyone in the parked car to get out after the warning cry. The accident occurred about 1:30 a. m. on January 1, 1946.

The evidence further shows that the defendant and his wife Charlotte, together with Mr. and Mrs. Von Rhone, had likewise, on this same evening, attended a dance at North Platte although not the same dance; and that shortly after midnight they had left North Platte to return to their home at Lexington. In doing so they proceeded east on U. S. Highway No. 30. They were traveling in a 1937 Chevrolet coupé owned by defendant. He was driving. Seated next to him was his wife and to her right was Rhone, who was holding his wife on his lap. As they approached the point of the accident both wives were sleeping. Rhone's view was obstructed by his wife. Immediately before the accident the defendant and Rhone were visiting.

Defendant testified he was traveling about 40 to 45 miles an hour; that he was traveling on the south or right lane of the highway; that the night was clear, the paving dry, and there was nothing in the air obstructing his view; that there were no cars coming from the east

to interfere with his vision; that he had good lights; that the lights could be adjusted either to high or low; that when on high his range of vision was from 275 to 325 feet; that when on low it was from 50 to 75 feet; that he did not know whether he was driving on high or low; that he did not think it would be safe to drive on the Lincoln Highway, which is U. S. Highway No. 30, with his lights on low when no cars were approaching; that he got a glimpse of the car, about 25 to 30 feet away, just before he hit it; that he attempted to turn to the left and apply his brakes; that he did not have time to do so; and that his car struck the left rear of the parked car.

After the accident defendant's car stopped in the ditch to the south of the highway some 114 feet from the point of impact. It was up against the railroad right-of-way fence. Rasmussen's car stopped just on the north edge of the paved highway, facing northeast, some 171 feet from the point of impact.

Except for Seaman, the plaintiff admits that, during the evening, everyone in her group had been drinking some intoxicating liquors. The extent thereof, according to her witnesses, was very moderate. However, there was testimony of empty pop and coke bottles in the Rasmussen car and that shortly after the accident three whisky bottles were found in the ditch some 8 or 10 feet north of the Rasmussen car at the point where it stopped after being hit. One of these bottles was full, one half full, and the other empty. There is also evidence of their conduct and mannerisms after the accident. From the evidence the jury could have come to the conclusion that they had been doing considerable drinking.

The duty of a person who has voluntarily become intoxicated is correctly stated in 45 C. J., Negligence, § 551, p. 997, as follows: "The care required of a person who has become intoxicated voluntarily is the same as that required of one who is sober. If he fails to exercise that degree of care for his own safety which an ordinarily prudent sober person would exercise under the same or

similar circumstances, and such failure contributes as a proximate cause to the injury of which he complains, he is guilty of contributory negligence. The fact that a person was intoxicated is a circumstance which may be considered in determining whether he exercised such care, but the mere fact that he was intoxicated at the time he was injured does not of itself constitute contributory negligence. In ability to exercise the care which an ordinarily prudent sober person would exercise under the same or similar circumstances, although due to intoxication, must nevertheless contribute as a proximate cause to the injury complained of. Thus a person is not guilty of contributory negligence where, although intoxicated, he exercises for his own safety the care which an ordinarily prudent person would have exercised under like circumstances, or where the circumstances were such that a sober man could not, by the exercise of ordinary care, have avoided injury." See, also, 38 Am. Jur., Negligence, § 203, p. 883; Nichols v. Havlat, 142 Neb. 534, 7 N. W. 2d 84.

It should here be said that the facts of this case do not bring it within the controlling principles announced in McGrath v. Nugent, 133 Neb. 237, 274 N. W. 549, and therefore that case is not applicable here.

A guest may be responsible for the consequences of his own negligence. Murphy v. Shibiya, 125 Neb. 487, 250 N. W. 746, and Crandall v. Ladd, *supra.*

As stated in Gleason v. Baack, *supra:* " 'A person riding in an automobile driven by another, even though generally not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable care to avoid injury. The care exacted is that which an ordinarily prudent person would exercise under like circumstances.' 5 Am. Jur. 769, sec. 475."

Was the plaintiff's conduct in remaining in the car for a minute or thereabouts after it was parked and just before the accident such that under the circumstances

here disclosed it would justify a jury in finding that she was guilty of contributory negligence sufficient to defeat her right to recover? Under our holding in Allen v. Clark, *supra,* we think not. In the latter case Koessel, with whom the plaintiff was riding as a guest, drove his car toward the southeast and across the center line of the road and into the driving lane for northbound traffic, of which there appears to have been little at the time of the accident. The car, after it came to a stop, left some 7 or 8 feet of space between its front and the east curb. It was a four-lane road. Several cars passed while it was parked. Plaintiff testified he saw the car which hit them when it was a block and a half away but remained in the car. The trial court in that case submitted in its instructions the following: " 'That after plaintiff's car became stalled, plaintiff carelessly and negligently remained therein, although he had ample time to get out of said car.' " The court then went on to say: "This court finds that there was no evidence showing any negligence on the part of the plaintiff. This court has repeatedly said that, where contributory negligence is pleaded as a defense, but there is no evidence to support such defense, it is prejudicial error to submit such issue to the jury. See Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19; Andersen v. Omaha & C. B. Street Ry. Co., 116 Neb. 487, 218 N. W. 135."

We find the facts and law of the foregoing case applicable and controlling here and the trial court was correct in granting a new trial as to the first cause of action.

The first question presented by the cross-appeal is the same question with reference to the plaintiff's second cause of action. The second cause of action being an assigned claim from the husband to the plaintiff she takes it subject to all defenses, including that of contributory negligence. Consequently, if the husband, as driver of the car, was guilty of any negligence which was the proximate cause of the accident she took the claim subject to such defense.

From the evidence the jury could have found that he left the car standing in the night, without lights, on the south lane of the main traveled portion of U. S. Highway No. 30, when there was ample room to have parked it on the shoulder. There is nothing in the record that would make it appear to have been impractical to do so. Such would be in violation of sections 39-757 and 39-778, R. S. 1943. As stated in Gleason v. Baack, *supra:* "The law is well settled by the decisions of this court that a violation of statutes regulating the use and operation of motor vehicles upon the highway is not negligence per se but evidence of negligence that may be taken into consideration with all the other facts and circumstances, in determining whether or not negligence is established thereby." In Huston v. Robinson, 144 Neb. 553, 13 N. W. 2d 885, we said: "But in the present case there is no evidence indicating that it was not practicable to have moved the car off the highway and consequently the evidence is sufficient to show that there was a noncompliance with the statute. This is evidence of negligence, which the jury may properly consider." Then we went on to say: "We think the evidence sufficient, under the state of the record, to take the question of the negligence of the driver of defendant's car to the jury. If, as contended by the plaintiff, the driver of defendant's car was negligent, under the circumstances shown, in parking or leaving the car standing on the paved portion of the highway, such negligence would be a direct contributing factor in the accident and afford the plaintiff a basis for recovery."

As stated in Ward v. Bandel, 181 Minn. 32, 231 N. W. 244: "There is ample evidence to sustain a finding that defendant was negligent. The accident happened more than half an hour after sunset, at a time when lights were required to be used. Whether the truck had a rear light burning, as required by L. 1927, p. 563, c. 412, § 54 (1 Mason, 1927, § 2720-54), and whether it was parked partly on the pavement when it was practicable to park

entirely off the pavement, so as to violate § 24 (1 Mason, 1927, § 2720-24) of the same chapter, were questions of fact for the jury."

And as stated in Renaud v. New England Transportation Co., 286 Mass. 39, 189 N. E. 789: "If as the jury could have found the truck was standing upon the right side of the travelled road and was without a rear red light, or other means adopted to warn travellers of its presence in violation of the statute, a finding of negligence on the part of the defendant was warranted. Woolner v. Perry, 265 Mass. 74. Lebowitz v. Bova, 274 Mass. 23. Tevyaw v. Hemingway Brothers Interstate Trucking Co. 284 Mass. 441."

From this summary there is no question but what there were sufficient facts upon which the jury could have based a finding that the driver of the Rasmussen car was guilty of negligence and that such negligence was a proximate cause of the accident. Consequently the matter of contributory negligence, as to the second cause of action, was properly for the jury.

Plaintiff pleaded that under the facts the defendant had the last clear chance to avoid the accident and sought the benefit of that doctrine.

As stated in Wilfong v. Omaha & C. B. Street Ry. Co., 129 Neb. 600, 262 N. W. 537: "This jurisdiction is committed to the rule that, 'although a party may have negligently exposed himself to an injury, yet, if the defendant after discovering his exposed situation negligently injures him, or is guilty of negligence in not discovering his dangerous position until too late, and the plaintiff is because thereof injured, he may nevertheless recover.' Omaha Street R. Co. v. Martin, 48 Neb. 65. See, also, Lucas v. Omaha & C. B. Street R. Co., 105 Neb. 432; Omaha Street R. Co. v. Larson, 70 Neb. 591; Zitnik v. Union P. R. Co., 91 Neb. 679; Zelenka v. Union Stock Yards Co., 82 Neb. 511."

We further clarified the applicability of this doctrine in Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916, as

follows: "The doctrine of the last clear chance is not applicable where the negligence of the party seeking to invoke it is active and continuous as a contributing factor up to the time of injury, but its applicability is not avoided by the mere continuing existence of the consequences or peril resulting from prior but completed conduct." The opinion goes on to approve the following from Parsons v. Berry, 130 Neb. 264, 264 N. W. 742: "The doctrine of last clear chance applies in those cases where there is negligence of the defendant subsequent to the negligence of the plaintiff and the defendant's negligence is the proximate cause of the injury."

We conclude that the facts require that issue to be submitted.

Should the trial court have sustained the plaintiff's motion for a directed verdict? We have, since Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473, been committed to the doctrine that: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps." This has been recently affirmed in Allen v. Clark, *supra,* as follows: "The correct applicable rule is that it is the duty of an automobile driver, in driving his car, to keep such a lookout ahead that he will see an obstruction or a vehicle as soon as it is illuminated by his lights, and it is his duty to have his car under such control, under the driving conditions then existing, that he can stop it in time to avoid a collision with an object in the area lighted by his lights. See Anderson v. Byrd, *supra;* Fisher v. Megan, *supra;* Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315."

"The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid

it." Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106. See Huston v. Robinson, *supra.*

The factual situation here does not bring the defendant within any of the recognized exceptions but rather within the general rule. There was nothing to excuse his failure to see what was plainly in the range of his lights and vision if he had maintained a proper lookout.

We think the court should have directed the verdict for the plaintiff as to the first cause of action. As to the second cause of action the court should have instructed the jury that the defendant was guilty of negligence as a matter of law but that the plaintiff's right to recover thereon was subject to the defense of contributory negligence, unless the doctrine of the last clear chance was applicable. Of course, in both causes of action the quantum of recovery would be a question of fact for the jury.

The admissibility of defendant's plea of guilty to the charge of reckless driving, provided the foundation is sufficient, is subject to the rule announced in .Piechota v. Rapp, 148 Neb. 442, 27 N. W. 2d 682. Therein we said: "The correct rule is: 'A plea of guilty entered by the defendant in a criminal action may be used against him as an admission that he committed the acts charged against him, in any subsequent action to which he is a party and which involves the same subject-matter.' Wisnieski v. Vanek, 5 Neb. Unof. 512, 99 N. W. 258. Under this rule only the plea of guilty was admissible." There are other errors assigned relating to evidence but we will not discuss them further as they will probably not reoccur in case of another trial.

We have come to the conclusion that the part of the judgment from which the cross-appeal was taken must be reversed and the cause remanded for retrial in accordance with the principles as herein announced. It is therefore directed that the judgment be reversed and the cause remanded for retrial. Since that part of the judgment from which the appeal was taken is affirmed

and the reversal arises out of the cross-appeal, all costs in this court are taxed to the defendant.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH DIRECTIONS.