IN RE ESTATE OF MARY E. DRYDEN, DECEASED. PATRICIA
JEAN JOHNSON ET AL., APPELLANTS, V. E. O. RICHARDS,
EXECUTOR OF THE ESTATE OF MARY E. DRYDEN,
DECEASED, ET AL., APPELLEES.

52 N. W. 2d 737

Filed April 4, 1952. No. 33118.

*Dallas A. Clouse,* and *Beatty, Clarke, Murphy & Morgan,* for appellants.

*Baskins & Baskins, Edward E. Carr, Richard D. Dittemore,* and *Greydon L. Nichols,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action in equity commenced in the county court by appellants against appellees to set aside a decree admitting to probate the will of Mary E. Dryden, deceased, on the ground that the probate thereof was obtained by fraud and that appellants have valid legal objections to its probate. Appellants were the grandniece and grandnephew respectively of the deceased, and are her only relatives. They and appellees are the beneficiaries named in the will, and E. O. Richards is the executor of the will and the estate of the deceased.

The will was without contest admitted to probate and about four months thereafter the petition was filed by appellants to vacate the order of probate and to be permitted to contest the will. The county court sustained demurrers of appellees to the petition and an appeal was taken to the district court. That court sustained the general demurrers filed therein by appellees to the petition and rendered a judgment of dismissal.

Appellants challenge the validity of the judgment of the district court because they claim that lawful notice of the hearing of the petition for the probate of the will of the deceased was not given. The defect alleged by them is that the order of the county court designated November 3, 1950, as the date of hearing of the petition for the probate of the will and required notice to be published as provided by law in the Chappell Register, a weekly newspaper. The notice was published in the issues of the paper of October 19, October 26, and November 2, 1950. The hearing was had and the decree of probate of the will was rendered on November 3, 1950, 15 days after the first publication of the notice. The notice was not published for three weeks successively covering a period of 21 days as appellants assert the law requires.

The statute requires that notice of the time and place of proving a will shall be given by publication in a newspaper designated by the judge of the county court "three weeks successively, and no will shall be proved until notice shall be given as herein provided * * *." § 30-217, R. R. S. 1943. Publication of notice sufficient to satisfy the demands of this statute was determined many years ago. The requirement of publication of a notice in a newspaper "three weeks" is complied with by the publication thereof in a weekly paper on one day of each of three weeks, that is, three successive weekly publications. The notice is complete upon distribution of the last issue of the paper containing the notice though three full weeks have not elapsed since the first

publication. Alexander v. Alexander, 26 Neb. 68, 41 N. W. 1065; State v. Hanson, 80 Neb. 724, 115 N. W. 294; Claypool v. Robb, 90 Neb. 193, 133 N. W. 178; In re Estate of Johnson, 99 Neb. 275, 155 N. W. 1100; Pohlenz v. Panko, 106 Neb. 156, 182 N. W. 972.

The act of 1915 defining the word "week" as used in certain statutes providing for publication of notices did not change or affect the construction of the statute providing for notice of the time and place of proving a will. Laws 1915, c. 222, p. 491; § 25-2227, R. R. S. 1943; In re Estate of Johnson, *supra*. It is conceded in this case that this is also true as to the act of 1917 on the subject of the publication of notices and other legal publications. Laws 1917, c. 202, p. 481. Likewise it is obvious that the act of 1923 by its terms applied only to the publication of notices and other legal publications required by law to be published "a certain number of days" when published in a daily, semiweekly, or tri-weekly paper. Laws 1923, c. 100, p. 255.

In Claypool v. Robb, *supra*, it was decided that a provision of the code that publication must be made four consecutive weeks was satisfied by publication in a weekly newspaper once each week for four consecutive weeks "But, where the notice is published in a paper having more than one issue during the week, insertion of the notice in each of the regular issues during the week is necessary to a complete publication of the notice for that particular week." It was because of the holding of the court in reference to the publication of legal notices in newspapers having more than one regular issue in each week that the Legislature passed Laws 1927, c. 63, p. 225. The amendment thereof in 1943 made no material change. It added a sentence defining a daily newspaper. Laws 1943, c. 47, p. 197; § 25-2228, R. R. S. 1943. The parts thereof pertinent to the problem now being considered are: "All legal publications and notices * * * that may by law be required to be published a certain number of days or a certain num-

ber of weeks shall be legally published when they have been published in one issue in each week in a daily, semiweekly or triweekly newspaper, such publication * * * to be made upon any one day of the week upon which such paper is published, except Sunday * * *. Nothing in this act contained shall be construed as preventing the publication of such legal notices and publications in weekly newspapers. * * * All legal publications and all notices of whatever kind or character that may be required by law to be published a certain number of days or a certain number of weeks, shall be and hereby are declared to be legally published when they shall have been published once a week in a weekly, semiweekly, triweekly or daily newspaper for the number of weeks, covering the period of publication."

The Legislature, by any of the acts above referred to, did not intend to enact that in no case would a publication be complete until the full number of weeks mentioned had elapsed after the first publication. This result if desired by the Legislature could easily have been accomplished by simple and clear language. Its objective was not to destroy the rule that where the time mentioned by the statute indicates only the number of times the notice is required to be published, it is satisfied if the notice is published the number of times mentioned. The purpose and intention of the Legislature were to eliminate the requirements of Claypool v. Robb, *supra,* and to provide that the insertion of the matter required to be published in one regular issue of a legal paper in any week should be a legal and sufficient publication for that period without regard to whether the paper had one or more than one regular issue during that period. The act of 1943 does not refer to the duration or period during which a notice or other legal publication must be published but it was intended to and does limit the number of issues in which the notice must appear when the medium of publication has more than one regular issue each week. The object of the act was

to put weekly newspapers and newspapers with more than one regular issue each week in the same situation in reference to the publication of notices and other publications. The time mentioned in the last part of the act that all legal publications and notices required by law to be published a certain number of weeks shall be legally published "when they shall have been published once a week in a weekly, semiweekly, triweekly or daily newspaper for the number of weeks, covering the period of publication" indicates only the number of times the notice is required to be published and does not refer to the duration of the notice. See, In re Estate of Johnson, *supra;* Davies v. American Investment & Trust Co., 94 Neb. 427, 143 N. W. 464; Claypool v. Robb, *supra;* State v. Hanson, *supra;* Davis v. Huston, 15 Neb. 28, 16 N. W. 820.

Appellants assail the legal sufficiency of the notice given of the time and place of the hearing of the petition for the probate of the will of the deceased. They say that service of notice upon them by publication was a denial of due process of law in violation of Article XIV, section 1, of the Constitution of the United States and Article I, section 3, of the Constitution of Nebraska, because the residence and location of each of them were known to the executor and proponent and that anything less than personal service of notice on them failed to satisfy the demands of due process. This in short is a declaration that section 30-217, R. R. S. 1943, fails to meet constitutional requirements.

The record does not show that this issue was presented in any manner in the district court. It made its initial appearance in the brief of appellants in this court. In order for this court to consider the constitutionality of a statute, except in an original action, it must be raised and placed in issue in the trial court. Weekes v. Rumbaugh, 144 Neb. 103, 12 N. W. 2d 636, 150 A. L. R. 129; Madison County v. Crippen, 143 Neb. 474, 10 N. W. 2d 260.

The notice of the hearing for the probate of the will was legally published, the service was complete on November 2, 1950, and it was permissible to have a hearing on the next day.

Appellants requested I. J. Nisley, one of the judges of the Thirteenth Judicial District, to declare himself disqualified to act in the case in any of the proceedings had and they objected to his doing so on the grounds that he was prejudiced against appellants; that he was related to one of the beneficiaries named in the will of the deceased; that he had discussed matters involved in the case with and had advised some of the parties adverse to appellants; and that he was a material witness for appellants in reference to matters involved in the case. The request and objections were denied by Judge Nisley and demurrers to the petition of appellants to vacate the order of probate of the will of the deceased were heard by him and sustained. The denial of the request and objections is assigned as an error by appellants but the assignment is not discussed by them. Generally a case in this court will be limited to errors assigned and discussed and an assignment of error not discussed will be considered waived. Rules of Supreme Court, 8 a 2 (4); Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355; Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588; Daugherty v. State, 154 Neb. 376, 48 N. W. 2d 76.

The correctness or invalidity of the action of the trial court in sustaining the demurrers to the petition and adjudging a dismissal must be decided from a consideration of the facts well pleaded in the petition. It alleges that: Mary E. Dryden died on the 9th day of October 1950, a resident of Deuel County, and left an instrument purporting to be her will. It and a petition for the probate thereof were filed in the county court of that county and November 3, 1950, was designated as the date of hearing. A hearing was held at the time indicated. The instrument was admitted to probate as the will of the

deceased, and E. O. Richards was confirmed and qualified as executor of the will. The property of the deceased consisted of real and personal property estimated by the petition for probate to be worth $90,000. She left surviving her appellants, the grandchildren of a deceased sister of the testatrix, as her only heirs at law. The appellants, as was well known to the proponent of the will, Leta Ellen Koier, and Richards, resided and had resided for many years at 209 West 46th Street in Seattle, Washington. Richards wrote the petition for the probate of the alleged will of the deceased and stated therein the correct address of appellants. Neither of them knew of the death of Mary E. Dryden, the existence of a will made by her, the filing in court for probate of an instrument claimed to be her will, nor the institution of any proceedings in regard thereto or with reference to her estate until they received on October 30, 1950, a letter from Richards dated October 27, 1950, stating the fact of the death of Mary E. Dryden, enclosing an alleged copy of the instrument said to be the will of the deceased, and advising appellants that the "will was in the process of being probated." Appellants had no knowledge of the date of hearing for the probate of the will of the deceased or of any date fixed for any hearing or proceedings in regard to the estate of the deceased until shortly before the filing of their petition in this case. The letter of Richards was silent as to all of such matters. Appellants immediately upon receipt of his letter wrote and mailed him a request for information as to the date of hearing on the probate of the will. He did not answer the request but remained silent and gave appellants no further information.

The instrument probated as the will of the deceased was prepared by Richards, a member of the Bar of Nebraska, and for many years prior thereto attorney for the testatrix and there was and had been between them a close fiduciary relationship. The preparation and execution of the will were under the personal and direct

supervision, management, and direction of Richards. He is principal beneficiary of the will and is named and designated therein as executor. He, as a part of a plan to secure for himself the property of the deceased, by the use of arts, devices, contrivances, and deception and by making use of the implicit confidence and trust which the deceased had for him, advised, persuaded, and induced her to make during a considerable period of time several wills and other instruments, each suggested and prepared by him, changing the disposition of her property, and each change made in these resulted in the gift of a greater part of her property to him. These instruments or any of them were not the product of the free and voluntary act of the deceased but each was the product of the fraud and undue influence of Richards, of such a nature and to such an extent, that they and each of them, including the one probated as the will of the deceased, were his instruments.

Richards during several years preceding the death of Mary E. Dryden induced and caused his wife to and she did make frequent visits to and spent much of her time at the home of the deceased, did errands for her, cooked her meals, complied with her every wish, and performed for her a vast number of personal favors and courtesies. Richards during this time frequently called at the home of the deceased and visited with her. These things were done as a part of a plan of ingratiating Richards in the trust and confidence of the deceased and enabled him to influence and control her in the disposition of her property to his advantage and profit. It was by virtue of these facts that he became the principal beneficiary and executor of the instrument probated as the will of the deceased.

The will was made on the 9th day of January 1950. The testatrix was an elderly woman, feeble in body and mind, physically and mentally weak and ill. She was and had been under the care of physicians. Richards was at that time and for several years prior thereto had

been the personal adviser and legal counselor of the testatrix in all of her personal and business matters. He was her close friend and confidant, and had gained and had her friendship, trust, and complete confidence to the extent that he was able to and did dominate and control her. She accepted, believed, and acted upon advice, counsel, or directions given her by him. The instrument signed by her on January 9, 1950, purporting to be her will was the result of the fraud and undue influence of Richards and was not and is not the will of the testatrix. He was not related to her, was not a natural object of her bounty, and had no relationship to her except as he had become acquainted with her as her counselor and adviser and thereafter ingratiated himself in her friendship, confidence, and trust.

He prepared, had executed, and filed the petition of the proponent for the probate of the will. He knew the date of the hearing to be had thereon, deliberately and fraudulently refrained from informing appellants of the facts in reference thereto except as above stated, and did not at any time advise them of the date of the hearing. He deliberately planned to deceive and did deceive appellants concerning the true facts of the making of the alleged will, its validity and force, and the time when it would be before the court for examination and probate. He knew at all of the times referred to that appellants were the only heirs at law of the deceased. He was the attorney for her estate, acted as such from the time of her death, and was present and conducted the proceedings on behalf of her estate and himself at the hearing for the probate of the will.

The objections of appellants to the probate of the alleged will of the deceased filed at the time of the filing of the petition to set aside the decree of probate are absence of due execution, mental incapacity of the deceased, and undue influence.

Appellants argue that a person designated in a will

as executor becomes such at the time of the death of the testator; that he is from that time vested with all the rights, powers, and duties and is subject to all the obligations, responsibilities, and liabilities of an executor; and that he then has without further act, proceedings, or adjudication the status of a fiduciary towards the estate, the beneficiaries, and the heirs of the deceased.

At common law the executor derived his power and authority solely from the will by which he was appointed, and not from the probate, which was held to be only evidence of his right. In this state and many of the other states the authority of an executor, while derived primarily from the will is not derived solely therefrom, is not complete until the court has approved his nomination, the executor has qualified by complying with certain statutory requirements, and has been granted letters testamentary by the court. In re Estate of Blochowitz, 124 Neb. 110, 245 N. W. 440; In re Estate of Haeffele, 145 Neb. 809, 18 N. W. 2d 228; State ex rel. Huber v. Tazwell, 132 Or. 122, 283 P. 745; In re Birkholz's Estate (Iowa), 197 N. W. 896; Davenport v. Sandeman, 204 Iowa 927, 216 N. W. 55; In re Estate of Swanson, 239 Iowa 294, 31 N. W. 2d 385; Estate of Svacina, 239 Wis. 436, 1 N. W. 2d 780; Annotation, 95 A. L. R. 828; 33 C. J. S., Executors and Administrators, § 22, p. 903. Richards became executor of the will of Mary E. Dryden when he was appointed and qualified on the 3d day of November 1950.

The date of the hearing for the probate of the will was November 3, 1950. The second publication of the notice of the hearing was October 26, 1950. The appellants, the heirs at law of the deceased, had no information of the death of Mary E. Dryden, that she left an alleged will, or of the pendency of the proceedings affecting it or her estate. They resided, as the proponent and Richards knew, in Seattle, Washington. The appellants received on October 30, 1950, a letter from Rich-

ards dated October 27, 1950, that stated the fact of the death of Mary E. Dryden, contained a copy of her will, and advised them that it "was in the process of being probated." The appellants upon receipt of the letter immediately wrote to Richards and requested him to inform them "the date of a hearing upon the probate of the will." He wholly disregarded the request of their letter to him.

It is unnecessary in this case to consider what the duty of Richards was, if any, in reference to appellants before he volunteered to give partial information to them by his letter of October 27, 1950. But when he broke his silence he became obligated to truthfully and completely state the facts within the limits of his information and knowledge in regard to the subjects referred to by his letter and enclosure transmitted with it, and not to withhold or distort anything that would tend to cause appellants to remain inactive.

Though one may be under no duty to speak, if he undertakes to do so, he must tell the truth and not suppress facts within his knowledge or materially qualify them. Fraudulent representations may consist of half-truths calculated to deceive, and a representation literally true is fraudulent if used to create an impression substantially false. In Long v. Krause, 105 Neb. 538, 181 N. W. 372, the court said: "A stranger, having secret knowledge of valuable mineral deposits in the waters of a private lake on land, may purchase the land without disclosing his superior knowledge, but a slight imposition on his part may terminate his privilege of silence; and, if he speaks falsely on matters relating to his secret knowledge and to the purpose of his purchase and thus deceives the owner into making a sale, he may be held liable for resulting damages." The opinion in that case states that this principle more than a century before was expressed in Turner v. Harvey, 1 Jac. (Eng.) 169, in this language: "* * * if an estate is offered for sale, and I treat for it, knowing that there

is a mine under it, and the other party makes no inquiry, I am not bound to give him any information of it; he acts for himself, and exercises his own sense and knowledge. But a very little is sufficient to affect the application of that principle. If a word, if a single word be dropped which tends to mislead the vendor, that principle will not be allowed to operate." See, also, Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S. W. 2d 368; Boas v. Bank of America, 51 Cal. App. 2d 592, 125 P. 2d 620; Blackstock Oil Co. v. Caston, 184 Okl. 489, 87 P. 2d 1087; Associated Indemnity Corp. v. Del Guzzo, 195 Wash. 486, 81 P. 2d 516; Dennis v. Thomson, 240 Ky. 727, 43 S. W. 2d 18; Van Houten v. Morse, 162 Mass. 414, 38 N. E. 705, 26 L. R. A. 430, 44 Am. S. R. 373; Restatement, Torts, Vol. 3, §§ 529, 550, pp. 67, 116; 37 C. J. S., Fraud, § 16, p. 246; 23 Am. Jur., Fraud and Deceit, § 83, p. 861.

The conclusion is reasonable that the motive that prompted Richards to give appellants the information he did was either to be of assistance to them in timely asserting any rights they claimed or had as heirs at law of the deceased that conflicted with the provisions of the will or that his purpose was to mislead them until an order of probate had been entered and the adjudication foreclosed a contest. It is difficult to develop any other reasonable alternative from the facts alleged in the petition and admitted by the demurrers.

If the motive was to be helpful, then it taxes credulity to believe that Richards would have delayed his letter until after the second publication of the notice with the date of hearing only a few days away and would also have neglected and omitted to have told appellants the most important fact that the date of the hearing on the probate of the will was November 3, 1950. He knew, as a lawyer, that prompt action by them could have secured a postponement of the hearing to a reasonable date in the future. The matters alleged by appellants are convincing that Richards desired and intended to

have appellants understand and believe that he was solicitous in good faith for their interests and rights, and that prejudice to them would not be permitted by him to intervene until they could secure from him the date of the hearing and arrange to appear and be represented. The substance of the petition in this regard is that appellants moved promptly as to this upon receipt of his letter. His silence to the request of their letter for information, and his failure to supply it or to delay the hearing, strengthens the conclusion that his letter to them was intended to cause inaction on their part until he could and did secure the probate of the will. The incomplete information given and the omissions of Richards are the "very little" mentioned in the Krause case that is sufficient to affect and make inapplicable the principle that he was under no obligation to appellants, and are the things that misled them and resulted in their failure to present their case at the time of the hearing of the petition for the probate of the will or to seek and obtain a postponement of the hearing until they could reasonably prepare and present their contentions at a later time. These constituted extrinsic fraud. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, defines extrinsic fraud as follows: "But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court * * * or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff * * * these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." See,

also, Purinton v. Dyson, 8 Cal. 2d 322, 65 P. 2d 777, 113 A. L. R. 1230; Laun v. Kipp, 155 Wis. 347, 145 N. W. 183, 5 A. L. R. 655; Larrabee v. Tracy, 21 Cal. 2d 645, 134 P. 2d 265; Keane v. Allen, 69 Idaho 53, 202 P. 2d 411; Jones v. Arnold, 359 Mo. 161, 221 S. W. 2d 187; Hewitt v. Hewitt, 17 F. 2d 716; State v. Vincent, 152 Or. 205, 52 P. 2d 203; Annotation, 88 A. L. R. 1201.

Richards become executor of the will and estate of the deceased on November 3, 1950. He was then executor, attorney for the estate, and the principal legatee and devisee of the deceased. . There was then a fiduciary relationship between him and the estate of the deceased, her heirs and beneficiaries, and all persons interested therein. The statute of this state providing for the appointment of an executor recognizes that an executor is a trustee to execute a trust by this language: "* * * the county court shall issue letters testamentary thereon (a probated will) to the person named executor therein, if he is legally competent, and he shall accept the trust * * *." § 30-302, R. R. S. 1943. The personal representative of an estate and his attorney are officers of the court and both are fiduciaries in their relation to persons entitled to share in the estate of the deceased. In re Estate of Blochowitz, *supra;* Meade v. Vande Voorde, 139 Neb. 827, 299 N. W. 175, 137 A. L. R. 554; In re Estate of Rhea, 126 Neb. 571, 253 N. W. 876. See, also, Fidelity & Deposit Co. v. Lindholm, 66 F. 2d 56, 89 A. L. R. 279; In re Estate of Willenbrock, 228 Iowa 234, 290 N. W. 502; Reconstruction Finance Corp. v. Lee, 290 Mich. 328, 287 N. W. 757; 33 C. J. S., Executors and Administrators, § 142, p. 1099.

The status of Richards as a trustee required him to make a full disclosure of all facts within his knowledge which were material for appellants to know for the protection of their interest, if they desired to contest the will of the deceased and acted timely after receipt of the information from the trustee. In Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393, it is said: "It is the

duty of a trustee to fully inform the cestui que trust of all facts relating to the subject matter of the trust which come to the knowledge of the trustee and which are material to the cestui que trust to know for the protection of his interests."

This obligated Richards when he became executor and was the attorney for the estate to advise appellants, at least, of the fact and the date of the probate of the will of the deceased; the time allowed for and the manner of taking an appeal to the district court from the decree of probate of the county court; that a new and complete trial in reference to the validity of the will of the deceased could be had in the district court; and that he had prepared the will and the facts concerning the making and execution thereof as he claimed them to be. He was also duty bound to correctly give any information he had concerning the will and the estate of the deceased on request of appellants. His default in these respects constituted a breach of his trust and a fraud on appellants. The court said in Rettinger v. Pierpont, *supra:* "Every violation by a trustee of a duty required of it by law, whether willful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust." See, also, Larrabee v. Tracy, *supra;* Jones v. Arnold, *supra;* 23 Am. Jur., Fraud and Deceit, § 81, p. 858.

The equity powers are ample, independently of statute, to set aside a probate procured by fraud. In In re Estate of Jensen, 135 Neb. 602, 283 N. W. 196, this court said: "* * * the statute enumerating grounds upon which a judgment may be vacated after term does not provide an exclusive remedy, but such grounds are concurrent with independent equity jurisdiction. * * * since the county court has exclusive original jurisdiction in probate matters, it has ample power to set aside probate decrees procured by fraud, independent of statute * * *." The Supreme Court of the United States in

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U. S. 238, 64 S. Ct. 997, 88 L. Ed. 1250, said on this subject: "From the beginning there has existed alongside the term rule a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgments regardless of the term of their entry. * * * This equity rule, which was firmly established in English practice long before the foundation of our Republic, the courts have developed and fashioned to fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the term rule."

Appellees rely strongly on Miller v. Estate of Miller, 69 Neb. 441, 95 N. W. 1010; In re Estate of House, 129 Neb. 838, 263 N. W. 389; and In re Estate of Reikofski, 144 Neb. 735, 14 N. W. 2d 379. The facts of each of those cases make them unimportant in the consideration and decision of this case. The facts alleged in the petition exempt appellants from a conclusion of negligence and an absence of diligence contributing to the entry of the decree of probate of the will from which they now seek relief.

The judgment sustaining the demurrers of appellees to the petition of appellants and dismissing the petition should be and it is reversed. This cause should be and it is remanded with directions to the district court of Deuel County to overrule the demurrers of appellees to the petition and to proceed further as provided by law.

REVERSED AND REMANDED WITH DIRECTIONS.